UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRIS HULL,

     Plaintiff,

v.                                                                                          Case No: 6:25-cv-1680-JSS-DCI

RICHLAND GRAND NATIONAL 1,
LLC, and BAKER BARRIOS
ARCHITECTS, INC.,

     Defendants.

_____/

## **ORDER**

Defendant Baker Barrios Architects, Inc. (BBA) moves to dismiss the complaint for lack of subject matter jurisdiction arguing that the complaint demonstrates the absence of constitutional standing, specifically the injury in fact requirement. (Dkt. 40 at 1–7.) Plaintiff, Chris Hull, opposes the motion to dismiss. (Dkt. 46.) Upon consideration, for the reasons outlined below, the court grants the motion, dismisses the complaint on standing grounds, and permits Plaintiff to file an amended complaint establishing standing if he can do so in good faith.[1]

---

[1] Defendants Richland Grand National 1, LLC and BBA also move to dismiss Plaintiff's complaint for failure to state a claim. (Dkts. 20, 40.) Because the court does not have subject matter jurisdiction given the lack of standing, the court does not consider the merits to determine whether the complaint states a claim. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[W]ithout jurisdiction[, courts] are powerless to consider the merits." (quotation omitted)); *Collectarius Fin., LLC v. Statebridge Co.*, No. 8:18–CV–137–T–24 AEP, 2018 WL 807041, at *1 n.1 (M.D. Fla. Feb. 9, 2018).

## BACKGROUND[2]

Plaintiff requires the use of a wheelchair as a mobility device. (*See* Dkt. 1 ¶ 3.) Defendant Richland Grand National 1, LLC owns Livano Grand National Apartments—a complex located in Orlando, Florida, that comprises over three hundred units across multiple buildings. (*See id.* ¶¶ 9, 19.) BBA is the architect for the complex. (*See id.* ¶ 10.) Plaintiff states that the complex was "designed and constructed for first occupancy after September 2023" and that the complex contains multifamily dwellings covered under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601–3631. (*See* Dkt. 1 ¶¶ 20–21.)

Allegedly, in January 2025, Plaintiff visited the complex to "look[] at one or more units" and "observed . . . accessibility barriers that would interfere with his ability to access and use the facilities." (*Id.* ¶ 24.) Plaintiff claims that Defendants "fail[ed] to design and/or construct apartments . . . with accessible and useable features for people with disabilities as required by the FHA." (*Id.* ¶ 33.) Plaintiff identifies several features of the complex that purportedly violate 42 U.S.C. § 3604(f)(3)(C)(i) and (iii)(II) and related regulation 24 C.F.R. § 100.205(c). (Dkt. 1 ¶¶ 37–38.) These features include a coffeemaker, mailboxes, a door lever, a point-of-sale machine, and other items whose height allegedly renders them inaccessible, as well as deficient handrailing, "light switches, electrical outlets,

---

[2] BBA makes a facial challenge concerning subject matter jurisdiction, as BBA accepts the truth of the complaint's allegations and does not refer to facts outside the complaint. (*See* Dkt. 40.) Therefore, for present purposes, the court derives the facts from the complaint. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).

thermostats[,] and other environmental controls." (*Id.*)  As a result of these barriers to access, Plaintiff reports, he "experienc[ed] discrimination" and was "deterred from renting" at the complex.  (*Id.* ¶ 33.)  Purportedly, once the complex has been fixed, as by correcting the identified barriers, Plaintiff "intends to return [there] and [to] other rental properties nearby to pursue a potential rental of an apartment."  (*See id.* ¶¶ 32, 34.)  Plaintiff seeks monetary, declaratory, and injunctive relief for the alleged FHA violations.  (*Id.* at 13–14.)

Under the FHA, any "aggrieved person" may sue for housing discrimination. *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017) (quoting 42 U.S.C. § 3613(a)).  An "aggrieved person" includes "'any person who' either 'claims to have been injured by a discriminatory housing practice' or believes that such an injury 'is about to occur.'" *Id.* (quoting 42 U.S.C. § 3602(i)).  Section 3604(f)(2) of the FHA provides:

> [I]t shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person[] or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available . . . .

42 U.S.C. § 3604(f)(2)(A)–(B).  As relevant here, discrimination under section 3604(f)(2) encompasses situations in which a party fails to "design and construct" certain multifamily dwellings so that "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons."  *Id.* § 3604(f)(3)(C)(i).  Discrimination under section 3604(f)(2) may also occur when "premises within such dwellings" lack certain "features of adaptive design" such as

"light switches, electrical outlets, thermostats, and other environmental controls in accessible locations." *Id.* § 3604(f)(3)(C)(iii)(II).

## APPLICABLE STANDARDS

Article III of the United States Constitution limits the power of the federal courts to the resolution of cases and controversies. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have . . . standing." *Id.* "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quotation omitted). Such a dismissal "is not a judgment on the merits and is entered without prejudice." *Id.* A defendant may dispute standing under Rule 12(b)(1) through a facial or factual challenge. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial challenge is "based solely on the allegations in the complaint." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In contrast, a factual challenge relies on "material extrinsic from the pleadings, such as affidavits or testimony." *Stalley*, 524 F.3d at 1233. The "party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy the requirements of standing, a

"plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). For the instant motion, injury in fact is the only standing requirement in dispute. (*See* Dkt. 40.)

An injury in fact is "an invasion of a legally protected interest which is [(1)] concrete and particularized, and [(2)] actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations, footnote, and quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quotations omitted). "An injury is concrete if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340). The "most obvious concrete harm[s]" are tangible harms, such as "physical injury or financial loss," but a plaintiff can also experience a concrete injury "when an alleged harm is intangible." *Id.* at 1243. "Stigmatic harm is [an] example of intangible injury giving rise to Article III standing." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 n.7 (11th Cir. 2023).

That said, a statutory violation, in and of itself, is insufficient to establish a concrete injury. *See TransUnion*, 594 U.S. at 427 ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) ("[A]

- 5 -

statutory violation gives rise to an injury in fact only if the violation (1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff."); *Laufer v. Arpan LLC*, 29 F.4th 1268, 1274 (11th Cir. 2022) ("[A] violation of an antidiscrimination law is not alone sufficient to constitute a concrete injury . . . ."), *vacated as moot,* 77 F.4th 1366 (11th Cir. 2023).[3]  While Congress may create "a statutory prohibition or obligation and a cause of action," a court must still "independently decide whether a plaintiff has suffered a concrete harm" because "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426 (quotation omitted).  Specifically, when determining whether a concrete injury exists with respect to a statutory violation, courts should assess whether the plaintiff's alleged injury bears "a close relationship to [a harm] traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425; *accord Hunstein*, 48 F.4th at 1243 ("[Courts] ask whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." (quotation omitted)). A plaintiff makes this showing by "identif[ying] a close historical or common-law analogue for [the] asserted injury." *TransUnion*, 594 U.S. at 424.

---

[3] Although vacated opinions like *Laufer* are void and have no legal effect, a court is "free to give statements in a vacated opinion persuasive value." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009); *see, e.g.*, *Ga. State Conf. of the NAACP v. Georgia*, No. 1:21-CV-05338, 2023 WL 7093025, at *7 (N.D. Ga. Oct. 26, 2023) (relying on mooted Eleventh Circuit caselaw as persuasive authority).  As *Laufer* is a well-reasoned examination of Supreme Court and Eleventh Circuit precedent on standing, the court considers *Laufer* persuasive.

Further, standing must be separately established "for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). When plaintiffs seek injunctive relief, standing's injury in fact component requires the plaintiffs to "show a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quotation omitted); *accord Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) ("[A] plaintiff seeking . . . injunctive or declaratory relief must prove not only an injury[] but also a real and immediate threat of future injury . . . to satisfy the injury in fact requirement." (quotations omitted)). To establish standing for injunctive relief, "a plaintiff must demonstrate more than an intent to return to the place responsible for the initial injury." *Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018). Mere "'some[]day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some[]day will be—do not support a finding of the 'actual or imminent' injury" that Article III requires. *Id.* (quoting *Lujan*, 504 U.S. at 564); *see Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 95 (11th Cir. 2022) (explaining that when a "theory of standing requires [the court] to accept a speculative chain of possibilities, [the] claimed future injury is . . . insufficiently concrete and imminent to invoke the judicial power" (quotation omitted)); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003) (granting a motion to dismiss based on lack of standing because the plaintiff did "not demonstrate[] anything but a speculative or conjectural future injury" with regard to his request for injunctive relief).

## ANALYSIS

BBA asserts that Plaintiff lacks Article III standing because Plaintiff has not alleged a concrete and particularized injury that is actual or imminent. (Dkt. 40 at 5.) Specifically, BBA argues, the court must dismiss Plaintiff's complaint because Plaintiff "fails to allege any injury at all": "[h]e simply states that he was 'deterred' from renting" at the complex after he "visited [it] and observed conditions that he alleges to be FHA violations." (*See id.* at 6 (emphasis omitted).)

In response to BBA's motion, Plaintiff cites *Harding v. Orlando Apartments, LLC*, No. 6:11-CV-85-ORL-19DAB, 2011 WL 1457164 (M.D. Fla. Apr. 15, 2011), (Dkt. 46 at 9), which held that a disabled individual suffered a sufficient injury in fact under section 3604(f)(2) when the individual visited a property and "allegedly found [non-FHA compliant] features [that] remain[ed] in effect." 2011 WL 1457164, at *3. Plaintiff also provides *Chapuis v. Forest Hill Group LLC*, No. 2:24-CV-2525-SHL-TMP, 2025 WL 2382068 (W.D. Tenn. Aug. 15, 2025), as a recent, "factually similar case." (Dkt. 46 at 10–11.) The court in *Chapuis* determined that a disabled plaintiff's alleged "observ[ation of] over forty FHA violations" at the defendant's property resulted in "concrete and particularized" injuries, as the violations "made [the plaintiff] feel discriminated against and deterred [the plaintiff] from renting there." 2025 WL 2382068, at *2. Plaintiff further highlights *Bowman v. Wildwood of Lubbock, LLC*, No. 5:19-CV-164-H, 2020 WL 10458628 (N.D. Tex. Oct. 23, 2020), (Dkt. 46 at 9–10), in which a disabled plaintiff was found to have sufficiently pleaded a concrete harm when the plaintiff not only observed FHA violations but also claimed to have "not [been]

able to fit his wheelchair through a doorway" at the defendant's property.  2020 WL 10458628, at *6.[4]

After reviewing the caselaw, the court agrees with BBA that Plaintiff has not adequately pleaded standing.  The Supreme Court has made clear that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *TransUnion*, 594 U.S. at 427; *accord Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").  In this case, Plaintiff asserts two injuries caused by his observation of Defendants' FHA violations: (1) "experiencing discrimination" as defined by the FHA and (2) "being deterred from renting" at the complex because of this discrimination.  (Dkt. 1 ¶ 33.)  These purported injuries do not satisfy Article III's concreteness requirement following *TransUnion*.

First, while the common-law analogue requirement established in *TransUnion* does not apply to stigmatic injuries, *see Green-Cooper*, 73 F.4th at 890 n.9, Plaintiff's claim of having "experienc[ed] discrimination" in violation of the FHA, by itself, is insufficient to demonstrate concrete harm.  *See Walters*, 60 F.4th at 648 (requiring an

---

[4] In addition to the cases discussed above, Plaintiff cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  (Dkt. 46 at 8.)  Plaintiff relies on the case for the proposition that the "actual or threatened injury required by [Article] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  *Havens Realty*, 455 U.S. at 373 (alteration adopted and quotations omitted).  (Dkt. 46 at 8.)  Citation to *Havens Realty* notwithstanding, Plaintiff's statutory-rights position conflicts with modern-day standing doctrine and is thus unpersuasive.  *See TransUnion*, 594 U.S. at 426–27; *Spokeo*, 578 U.S. at 341; *Hunstein*, 48 F.4th at 1242 ("[N]ot every statutory wrong causes an injury capable of supporting standing."); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing[.]").

alleged statutory violation to "inflict[] some separate concrete harm . . . or . . . create[] a material risk of such harm" to produce an injury in fact); *Laufer*, 29 F.4th at 1274 ("To find concrete injury whenever an individual personally experiences discrimination in violation of a federal statute would be to equate statutory violations with concrete injuries. For better or worse, [courts cannot] do that."); *see also Allen v. Wright*, 468 U.S. 737, 757 n.22 (1984) (explaining that while "stigmatic injury . . . is judicially cognizable to the extent that [a plaintiff is] personally subject to discriminatory treatment," it "requires identification of some concrete interest with respect to which [the plaintiff is] personally subject to discriminatory treatment"). Consequently, Plaintiff's reliance on *Harding* is unavailing, as Plaintiff must identify some concrete injury that resulted from Defendants' statutory violations to establish his standing. *Cf. Laufer*, 29 F.4th at 1274–75 (concluding that the plaintiff "adequately pleaded a concrete stigmatic injury" to confer standing "[b]ecause she claim[ed] not only that she suffered illegal discrimination but also that the discrimination resulted in" emotional injury).

Second, Plaintiff's purported deterrence from renting at the complex solely because of his observation of alleged FHA violations also fails to constitute an Article III injury, as Plaintiff has not demonstrated how this asserted injury bears "a close relationship" to a traditional harm. *See TransUnion*, 594 U.S. at 424; *Hunstein*, 48 F.4th at 1243. The court has identified only three cases in which such an injury under the FHA was found to be a concrete harm. *See Burnett v. Rutledge Flats, LLC*, No. 3:24-CV-00962, 2025 WL 2796783, at *4 (M.D. Tenn. Sept. 29, 2025); *Chapuis*, 2025 WL

2382068, at *2; *Morgan v. Nash St., LTD.*, No. 4:17-CV-3477, 2018 WL 8223421, at *2 (S.D. Tex. Mar. 9, 2018).  Although such cases could constitute persuasive authority, they are not binding, *see Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001), and unlike the courts in *Burnett*, *Chapuis*, and *Morgan*, this court must apply Eleventh Circuit authority on standing.  Therefore, the court does not deem the cases persuasive as to the issue before it.  *See Burnett*, 2025 WL 2796783, at *4; *Chapuis*, 2025 WL 2382068, at *2; *Morgan*, 2018 WL 8223421, at *2.

Moreover, Plaintiff's asserted deterrence-related injury resembles a purely psychological harm that is inadequate to constitute an actual injury.  *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) (noting that "the psychological consequence presumably produced by observation of conduct with which one disagrees" is not an Article III injury); *Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 993 (11th Cir. 2022) ("[P]urely psychic injuries . . . are not concrete, so they do not give rise to standing." (citing *Diamond v. Charles*, 476 U.S. 54, 67 (1986))).  Accordingly, because Plaintiff has not provided any common-law comparator, his alleged deterrence from renting as a result of his mere observation of statutory violations also fails to establish standing.  *See DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1328 (M.D. Fla. 2024) ("In . . . light of [the p]laintiffs' failure to identify any potential common-law analogue for their [statutory] claim, much less a plausibly appropriate one, they have not shown standing based on *TransUnion*."); *Klein v. Receivable Mgmt. Grp., Inc.*, 595 F. Supp. 3d 1183, 1190–92, 1194

- 11 -

(M.D. Fla. 2022) (determining that the plaintiff lacked standing when she failed to demonstrate that her asserted injury bore a close relationship to a traditional harm).

The court also notes that *Bowman* is distinguishable from this case because, unlike the plaintiff in *Bowman*, Plaintiff has not alleged that the complex's noncompliant features actually prevented him from accessing or using its facilities. *Cf.* 2020 WL 10458628, at *6 ("Here, [the plaintiff] has provided evidence that he has suffered more than a bare procedural violation. [The plaintiff] presents evidence of a concrete harm . . . by, for example, not being able to fit his wheelchair through a doorway."). Rather, Plaintiff asserts that the complex's noncompliant features, if not corrected, "*would* interfere with his ability to access and use the facilities" in the future. (Dkt. 1 ¶ 24 (emphasis added); *see id.* ¶ 32.) However, as addressed below, this alleged future injury is insufficient to confer standing because Plaintiff has not demonstrated that it is "actual or imminent." *See Lujan*, 504 U.S. at 564. Because Plaintiff has failed to establish a concrete injury caused by Defendants' purported FHA violations, Plaintiff lacks standing to seek damages. *See TransUnion*, 594 U.S. at 427; *Walters*, 60 F.4th at 648.

Plaintiff's requests for declaratory and injunctive relief similarly fail for lack of standing. "[A] plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston*, 733 F.3d at 1328 (quotation omitted); *see Koziara*, 392 F.3d at 1305 ("[A] plaintiff seeking . . . injunctive or declaratory relief must prove not only an injury[] but also a real and immediate threat of future injury . . . to satisfy the injury in fact requirement."

(quotations omitted)).  Here, Plaintiff contends that the alleged FHA violations may "interfere with his ability to access and use the [complex's] facilities" in the future, (*see* Dkt. 1 ¶¶ 24, 32), but he has not demonstrated that such an injury is "actual or imminent."  *See Lujan*, 504 U.S. at 564.  Plaintiff claims to have visited the complex only once.  (*See* Dkt. 1.)  He does not allege that he has submitted an application to rent an apartment at the complex.  (*See id.*)  Although he states his "inten[tion] to return" to the complex (once it has been fixed) and to see "other rental properties nearby to pursue a potential rental of an apartment," (*id.* ¶¶ 32, 34), such "conclusory allegations contain no concrete plan regarding [his] return."  *See Solano*, 735 F. App'x at 655.  Thus, because the alleged FHA violations "pose no real and immediate threat of future injury," Plaintiff lacks standing to seek declaratory or injunctive relief against Defendants under the FHA.  *Belcher v. Grand Rsrv. MGM, LLC*, 269 F. Supp. 3d 1219, 1228 (M.D. Ala. 2017) (concluding that former residents of an apartment complex lacked standing to seek injunctive relief concerning alleged FHA violations because the former residents had already moved out of the complex); *see Kennedy v. Beachside Com. Props., LLC*, 732 F. App'x 817, 821–22 (11th Cir. 2018) (concluding that a plaintiff lacked standing to seek injunctive relief regarding disability discrimination when the plaintiff alleged only a single visit to the defendant's business and a generalized intent to return to the area in the future); *cf. Houston*, 733 F.3d at 1325, 1340 (holding that a plaintiff had standing to pursue injunctive relief with respect to the defendant's property because the plaintiff had visited the property twice before

filing suit, drove by the store often to visit his lawyer, and would likely return to the property).

Plaintiff lacks standing to seek monetary, declaratory, or injunctive relief because he has not adequately alleged an injury in fact. As a result, the court does not have subject matter jurisdiction over the complaint. *See Stalley*, 524 F.3d at 1234–35. The court thus grants BBA's motion to dismiss based on lack of subject matter jurisdiction and dismisses Plaintiff's complaint. However, the court also affords Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading before trial] when justice so requires."); *Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1376 (S.D. Fla. 2025) (observing that district courts generally enjoy "discretion to grant leave to amend sua sponte").

## CONCLUSION

Accordingly:

1. BBA's motion to dismiss (Dkt. 40) is **GRANTED**.

2. The complaint (Dkt. 1) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

3. Richland Grand's motion to dismiss the complaint for failure to state a claim (Dkt. 20) is **DENIED as moot**.

4. If Plaintiff can do so in good faith, he may file an amended complaint that establishes his standing to pursue the claims asserted in the complaint. The deadline for filing the amended complaint is June 8, 2026. The court cautions

- 14 -

Plaintiff: "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the deadline to amend expires without the plaintiff amending [the] complaint or seeking an extension of time [to do so]." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719 (11th Cir. 2020).

5. This case remains stayed and administratively closed. (*See* Dkt. 38.) If Plaintiff timely files an amended complaint establishing subject matter jurisdiction, the court will thereafter—by separate order—lift the stay, direct the Clerk to reopen the case, and enter a case management and scheduling order.

**ORDERED** in Orlando, Florida, on May 22, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

- 15 -